IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BRIDGET M. LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV315 |
| | ) | |
| LIBERTYWOOD NURSING CENTER, | ) | |
| WILLIAM SCHUTZ, and | ) | |
| DEBBIE DRAUGHN, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff Bridget M. Long ("Plaintiff"), proceeding pro se, filed this action asserting various claims of discrimination based on race and retaliation, violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"). This court subsequently dismissed several of Plaintiff's claims, leaving only her claim of retaliation in violation of Title VII. (Memorandum Opinion and Order ("Mem. Op. & Order") (Doc. 22) at 9.)

Presently before this court is a Motion for Summary Judgment filed by Defendant Libertywood Nursing Center

("Defendant" or "Defendant Libertywood"). (Doc. 44.)[1] Plaintiff
received a Roseboro letter, informing her of her right to
respond to Defendant's Motion for Summary Judgment. (Doc. 46.)

Plaintiff did not submit a formal response to Defendant's
Motion for Summary Judgment, but instead, filed two documents
opposing the motion. First, Plaintiff filed an Affidavit,
entitled "Plaintiff's Pro Se Affidavit in Support of Plaintiff's
Timely Motion Request to Dismiss Defendant's Motion for Summary
Judgment and a Motion for a Direct Verdict and Relief," what
this court refers to as "Plaintiff's Affidavit." (Pl.'s Aff.
(Doc. 51).) Second, Plaintiff filed her "Pro Se Informal
Brief," what this court refers to as "Plaintiff's Brief."
(Pl.'s Br. (Doc. 52).) These documents, although they are not
typical "responses," do outline the reasons why Plaintiff
believes Defendant's Motion for Summary Judgment should be
denied. Therefore, this court will consider the arguments put
forth in both documents. Defendant has subsequently replied
(Doc. 59), and Defendant's Motion for Summary Judgment is now
ripe for adjudication. Additionally, there are a number of

---

[1] Defendants William Schutz and Debbie Draughn were
originally named in the Complaint, but this court dismissed
Schutz and Draughn from the case. (Mem. Op. & Order (Doc. 22)
at 9.) Therefore, Defendant Libertywood is the only defendant
for the purpose of this motion.

other motions that are before this court, which this court will also address.

For the reasons that follow, this court will deny Plaintiff's Pre-trial Motion for United States Constitutional Law Clarity Concerns and Civil Rights Proceedings (Doc. 61); grant in part and deny in part Defendant's Motion to Strike Plaintiff's Exhibits (Doc. 56); deny Defendant's Motion to Strike Plaintiff's Affidavit (Doc. 53); deny Plaintiff's Motion Request to file Report in Court Records of Mediation Session Results and Relief from Assessed Payment of $500 (Doc. 48); grant Plaintiff's Motion/Request that Mediation Fees be Waived (Doc. 29); deny as moot Plaintiff's Pro Se Motion/Request that the Court Subpoena Witnesses for Trial (Doc. 28); and grant Defendant's Motion for Summary Judgment (Doc. 44). Accordingly, this case will be dismissed.

I.  **PRELIMINARY MATTERS**

As indicated above, there are a number of other motions before this court in addition to Defendant's Motion for Summary Judgment. Some of these motions address the evidence this court is to consider in deciding Defendant's Motion for Summary Judgment.  As a result, this court will address these

preliminary motions first before considering Defendant's Motion for Summary Judgment.

**A.    Request to Waive Mediation Costs (Doc. 29)**

Plaintiff requests that this court waive her mediation costs.  Local Rules allow this court to waive such fees.  Specifically, Local Rule 83.9c(c) says,

> If a party contends it is unable to pay its share of the mediator's fee, that party shall, before the conference, file a motion with the Court to be relieved of the obligation to pay.  The motion shall be accompanied by an affidavit of financial standing.  The mediated settlement conference should proceed without payment by the moving party, and the Court will rule on the motion upon completion of the case.  The Court will take into consideration the outcome of the case, whether by settlement or judgment, and may relieve the party of its obligation to pay the mediator if payment would cause a substantial financial hardship.  If the party is relieved of its obligation, the mediator shall remain uncompensated as to that portion of his or her fee, a circumstance that reflects the mediator's duty of pro bono service.

LR 83.9c(c), available at http://www.ncmd.uscourts.gov/sites /ncmd/files/CIV_LR.pdf.

Looking at the record, it appears that Plaintiff requested that this court waive the mediation fee before the mediation conference began.  The mediator in this case was appointed on April 1, 2014. (Doc. 27.) Plaintiff made her first request for waiver of mediation fees on April 25, 2014. (Doc. 29.) Then, the conference took place on August 19, 2014. (Pl.'s Mot. for Relief

-4-

from Assessed Payment of $500.00 (Doc. 48) at 1 (renewing Plaintiff's request for relief).)  As part of her initial request, Plaintiff included an affidavit outlining her financial difficulties and her lack of a permanent job, satisfying the requirement that she provide an "affidavit of financial standing."  (Pl.'s Aff. of Facts (Doc. 30) at 1.)

This court recognizes that this case will ultimately be resolved by judgment, rather than by settlement between the parties.  However, this court also finds that requiring Plaintiff to pay the mediation costs would "cause a substantial financial hardship."  See LR 83.9c(c).  Based on these findings, this court finds it is proper to waive the mediator fees, and since this court is entering summary judgment on behalf of Defendant and dismissing the matter, now is the appropriate time to waive such fees.

Therefore, Plaintiff's initial request for waiver of mediation fees (Doc. 29) will be granted.  Because it requests the same relief, Plaintiff's renewed motion for waiver of mediation costs (Doc. 48) will be denied as moot.

**B.    Motion to File Mediation Report (Doc. 48)**

Along with asking that mediation costs be waived, Plaintiff also filed a "Motion Request to File Report in Court Records of

Mediation Session Results." (Doc. 48.)  Under this court's
local rules,

> Evidence of statements made and conduct occurring in
> a mediated settlement conference or otherwise in
> communications with a mediator during the mediation
> process . . . shall not be subject to discovery and
> shall be inadmissible in any proceeding in the action
> or other civil actions on the same claim.

LR 83.9e(i)(1).  There are limited exceptions to this rule; for
instance, the statements or conduct of a party during mediation
can be disclosed in a proceeding for sanctions.  See LR
83.9e(i)(1)(i).

   To the extent that Plaintiff seeks to inform this court of
the substance of the parties' negotiations, this information is
inadmissible.  To the extent Plaintiff seeks to report the
parties' conduct during the mediation, Plaintiff has not made
allegations of sanctionable conduct by either party.  It appears
that there may have been some miscommunication over the date and
time of the mediation session, and this certainly was an
inconvenience to Plaintiff who had to secure transportation.
Nonetheless, based on the information in front of this court, it
does not appear that sanctions are warranted.  Accordingly, this
motion will be denied.

### C.  **Motion for Directed Verdict (Doc. 51)**

The title of Plaintiff's Affidavit (Doc. 51) indicates that it is requesting a "direct verdict."  There is no provision in the Federal Rules of Civil Procedure that specifically provides for a directed verdict, but Rule 50(a) allows the court to grant a motion for judgment as a matter of law, which would have the same effect as a directed verdict in a state court.  <u>See</u> Fed. R. Civ. P. 50(a).

However, this is not the correct time for Plaintiff to make such a motion.  A motion for judgment as a matter of law occurs during a jury trial when the other party has "been fully heard." <u>Id.</u>  This matter has not reached a trial before a jury, and as a result, this court cannot enter judgment as a matter of law for Plaintiff pursuant to Rule 50(a).

Additionally, Plaintiff has not shown that she is entitled to judgment as a matter of law.  A judgment as a matter of law can be issued when the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party."  <u>Id.</u>  This court would have to find that, assuming that all of the facts are the way that Defendant sees them, there is no way a jury could rule in Defendant's favor.  As explained in this court's analysis of Defendant's Motion for Summary

Judgment, there are a number of facts that a jury could use to find for Defendant.  Therefore, even if this was the proper time to consider a motion for judgment as a matter of law, or were this court to convert the motion to a motion for summary judgment, this court would not be able to grant such a motion for Plaintiff.

   D.   **Request to Subpoena Witnesses for Trial (Doc. 28)**

   In a motion dated April 24, 2014, Plaintiff requested that approximately 30 witnesses be "subpoenaed for public trial proceedings" as Plaintiff believed these individuals have "knowledge of my employment discrimination and I being aggrieved in this case matter."  (Pl.'s Motion/Request to Subpoena Witnesses (Doc. 28) at 1-4.)

   Because of this court's decision on Defendant's Motion for Summary Judgment explained in this opinion, there will be no trial.  Therefore, there is no need to subpoena witnesses.  As a result, this court will deny this motion as moot.

   E.   **Plaintiff's Additional Claims (Doc. 52)**

   Plaintiff, in her Pro Se Informal Brief, made a number of other claims for relief besides her retaliation claim under Title VII.  These claims include: (1) a Fourteenth Amendment due process claim for Defendant not providing a pre-dismissal

conference before terminating Plaintiff; (2) a First Amendment

claim; and (3) an age discrimination claim.  (Pl.'s Br. (Doc.

52) at 3-5, 10.)[2]

If Plaintiff intends for these to be amendments to her

original complaint, this court will not permit Plaintiff to

amend her complaint to add these claims.  Rule 15(a) of the

Federal Rules of Civil Procedure governs when a party can amend

her complaint.  Fed. R. Civ. P. 15(a).  A party is allowed to

amend her complaint automatically with 21 days of filing the

complaint, but after that, the party must have "leave" or

permission from the court to amend her pleading.  See Fed. R.

Civ. P. 15(a)(1)-(2).

There are two reasons why this court will deny Plaintiff

permission to amend her complaint to include these new claims.

First, this court notes that these new claims are substantially

different from the Title VII claim currently in front of this

court, alleging new causes of action that would require this

court to inquire into new facts.  Additionally, Plaintiff

attempts to add these claims at a late point in these

proceedings, when the parties have completed discovery and

---

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

Defendant has filed a motion for summary judgment.  Therefore, adding these claims now would prejudice Defendant.

Second, this court finds that these claims would be futile, meaning that they are "clearly insufficient or frivolous on [their] face."  See Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 200 (4th Cir. 2014).  For instance, Plaintiff's new First and Fourteenth Amendment claims only apply to government action.  Actions by a private employer do not fall within the protection of the First and Fourteenth Amendments.  See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982); Jackson v. Metro. Edison Co., 419 U.S. 345, 349 (1974).  Additionally, Plaintiff has not stated a claim for age discrimination.  As a result, this court will not consider these additional claims.

### F.  Defendant's Motions to Strike (Docs. 53, 56)

Defendant Libertywood requests that this court strike Plaintiff's Affidavit (Doc. 51) and strike two exhibits included on pages 23, 24, and 28 of Plaintiff's Brief (Doc. 52). (See Def.'s Mots. to Strike (Docs. 53, 56).)

First, Defendant requests that this court strike portions of Plaintiff's Affidavit because Paragraphs 12, 13, 14, 15, and 7 of Plaintiff's Affidavit fail to comply with Rule 56(c)(2) and 56(c)(4) of the Federal Rules of Civil Procedure.  (Doc. 53.)

Rule 56(c)(4) governs affidavits used to support or oppose a motion for summary judgment, and requires that such an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Rule 56(c)(2) then gives one party the opportunity to object to any material cited by another party if that material cannot be presented in a form that would be admissible in evidence.

This court agrees with Defendant that Plaintiff's Affidavit does not comport with the rules set forth for affidavits, and this court does not read the allegations made in Plaintiff's Affidavit as presenting admissible evidence. Nevertheless, it appears to this court that Plaintiff was attempting to respond to Defendant's Motion for Summary Judgment when she prepared her "Affidavit" and included arguments that one would expect a party to make in a response to a summary judgment motion. Therefore, consistent with its obligation to construe pro se pleadings liberally, this court will not strike Plaintiff's Affidavit but will treat Plaintiff's Affidavit as a response to Defendant's Motion for Summary Judgment.

Second, Defendant requests that this court strike two exhibits attached to Plaintiff's Brief because they fail to comply with the Federal Rules of Civil Procedure and the Federal Rules of Evidence. (Doc. 56.) Defendant argues that Exhibit 20, (see Pl.'s Br. (Doc. 52) at 28), attempts to disclose evidence of settlement offers made during the Equal Employment Opportunity Commission ("EEOC") conciliation process and is therefore inadmissible under the provisions of Title VII[3] and under Fed. R. Evid. 408. (Def.'s Mem. in Supp. of Def.'s Mot. to Strike Two of Pl.'s Exs. ("Def.'s Strike Mem.") (Doc. 60) at 1-2.) This court agrees, and Exhibit 20 is stricken from Plaintiff's Brief.

Defendant also points to an unnumbered exhibit in Plaintiff's Brief that contains an EEOC determination made on January 28, 2013, (see Pl.'s Br. (Doc. 52) at 23-24), and contends that it is inadmissible under Rule 403 of the Federal Rules of Evidence. (Def.'s Strike Mem. (Doc. 60) at 2.) Generally, prior administrative findings, such as the EEOC

---

[3] Although Defendant cites 42 U.S.C. § 2000(e)(m) in its brief, this court assumes that Defendant is referring to the confidentiality requirements of the Title VII conciliation provisions. See 42 U.S.C. § 2000e-5(b) ("Nothing said or done during and as a part of [the conciliation process] may be made public . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned.").

determination in this case, can be admitted as evidence, but as Defendant correctly points out, this court is not bound by the EEOC's findings.  See Laber v. Harvey, 438 F.3d 404, 421-22 (4th Cir. 2006).

Rule 403 provides that this court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  This court agrees with Defendant that the EEOC determination may have diminished probative value due to a possible error of law in the EEOC's determination.  Yet, at this point, this court does not find that any of the concerns outlined in Rule 403 substantially outweigh the probative value. Accordingly, the motion to strike page 23 and 24 of Plaintiff's Brief is denied.

### G.   **Plaintiff's Pretrial Motion (Doc. 61)**

Plaintiff also filed a "Pre-trial Motion For United States Constitutional Law Clarity Concerns And Civil Rights Court Proceedings," what this court refers to as "Plaintiff's Pre-trial Motion."  (Pl.'s Pre-trial Mot. (Doc. 61).)  In this pre-trial motion, Plaintiff expresses a number of concerns and asks

that this court "intercede on [Plaintiff's] behalf to prevent the defendant Libertywood Nursing Center representing attorney . . . from overstepping lawful boundaries in the court proceedings."  (Id. at 1.)

Plaintiff's main concern seems to stem from Defendant's motions to strike.  (See id. at 1-2.)  This court has denied one motion to strike completely and denied one motion to strike in part, and in addition, this court has explained its reasons for reaching such a decision.  See supra Part I.F.  To the extent Plaintiff's Pre-trial Motion addresses these motions to strike, the motion is denied as moot.

Plaintiff also seems to be concerned that counsel for Defendant Libertywood has been granted preferential treatment, since he is a licensed attorney and Plaintiff is proceeding pro se. (Plaintiff's Pre-trial Mot. (Doc. 61) at 2.)  This court can assure Plaintiff that there has been no preferential treatment.  Plaintiff has represented herself well, but as explained below, the merits of Plaintiff's claim require that this court dismiss the case.

Finally, Plaintiff asks for counsel at trial.  Because this court has dismissed her case, this request is now moot.

## II.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The sole dispositive motion pending before this court is Defendant's Motion for Summary Judgment.  (Doc. 44.)  Based on the reasons stated herein, this court will grant Defendant's motion.

### A.  Legal Standard

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists, thus entitling the moving party, in this case Defendant, to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Defendant bears the burden of initially demonstrating that there is no genuine issue of material fact.  Celotex, 477 U.S. at 323. If the Defendant has met that burden, then the nonmoving party, Plaintiff, must persuade the court that a genuine issue remains for trial.

> When the [Defendant] has carried its burden under
> Rule 56(c), its opponent must do more than simply
> show that there is some metaphysical doubt as to the
> material facts.  In the language of the Rule, the
> nonmoving party must come forward with "specific
> facts showing that there is a genuine issue for
> trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations and footnote omitted) (quoting Fed. R. Civ. P. 56).  In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The court must view the facts in the light most favorable to Plaintiff, drawing inferences favorable to that party if such inferences are reasonable.  Id. at 255.  However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine.  Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248.  A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

Along with viewing the facts in the light most favorable to Plaintiff, this court must also recognize that Plaintiff is proceeding pro se.  When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, and not summarily dismiss the complaint "unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)

(citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>see also</u>
<u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (recognizing that
federal courts should construe a <u>pro se</u> petitioner's pleading
liberally, no matter how inartful).

    **B.**   **<u>Facts</u>**

Many of the facts underlying Plaintiff's claim for
retaliation are undisputed.  Until early 2010, Plaintiff was
employed by two companies: Healthcare Services Group, Inc.
("HSG") and Defendant Libertywood.  HSG provides housekeeping
services to Defendant Libertywood.  Along with working as a
housekeeper with HSG, Plaintiff worked for Defendant Libertywood
on a part-time basis, performing the duties of a non-certified
interactive aid or "sitter."

At some point before March 2010, another employee - Pam
Everhart - filed a Title VII claim.  The Title VII complaint
alleged that an employee - Plaintiff's cousin - was subjecting
Everhart to a hostile work environment.  Plaintiff was not
mentioned in the claim, nor was she involved in making the
claim.  Plaintiff does not dispute that, as part of the
investigation launched by her employer, all employees of both
HSG and Defendant Libertywood were instructed not to speak with
anyone associated with the hostile work environment claim.

Plaintiff admits that she then had a conversation with Everhart. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), Ex. K, Deposition of Bridget M. Long ("Pl.'s Dep.") (Doc. 45-11) at 12-13.)  Plaintiff contests any characterization by Defendant that she "approached Pam Everhart about any complaint she had made against any employee."  (Pl.'s Aff. (Doc. 51) ¶ 9.)  Nonetheless, Plaintiff's supervisor at HSG, Ed Johnson, believed that Plaintiff had spoken with Everhart, and on April 5, 2010, HSG terminated Plaintiff for insubordination. (Def.'s Mem., Ex. A, Pl.'s HSG Personnel File (Doc. 45-1) at 2.) Plaintiff asserts that Johnson cannot prove that she was insubordinate (Pl.'s Aff. (Doc. 51) ¶ 14.), but she does not contest that her speaking with the complainant served as the basis for HSG's decision to terminate her.  HSG has not been named as a party to this suit.

Although Plaintiff was terminated by HSG in April 2010, Plaintiff was not terminated by Defendant Libertywood at that time.  Plaintiff contends that her supervisors at Defendant Libertywood indicated that they would look into the matter and would schedule Plaintiff to work once the matter was settled. (Def.'s Mem., Ex. C, Pl.'s First EEOC Charge (Doc. 45-3) at 2.) Nonetheless, the last day Plaintiff worked for Defendant

Libertywood was March 19, 2010.  (Def.'s Mem., Ex. K, Pl.'s Dep. (Doc. 45-11) at 12.)

On June 12, 2010, Plaintiff filed her first EEOC charge against Defendant Libertywood (Case No. 435-2010-00536), claiming that Defendant Libertywood discriminated against Plaintiff based on her race.  In the charge, Plaintiff made several allegations against both Defendant Libertywood and HSG (even though HSG was not named in the charge).  (Def.'s Mem., Ex. C, Pl.'s First EEOC Charge (Doc. 45-3) at 1-2.)  Plaintiff reported that, on or about April 16, 2010, an employee of Defendant Libertywood indicated that Plaintiff had not been fired, but Plaintiff also recognized that she had not worked for Defendant Libertywood between March 19 and June 12, 2010.  (Id. at 2.)  The EEOC dismissed this charge and issued Plaintiff a right-to-sue letter on March 17, 2011.  (Def.'s Mem., Ex. D, First Right-to-Sue Letter (Doc. 45-4) at 1-2.)  The letter stated, "In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* **this Notice.**"  (Id. at 2.)  Yet, Plaintiff did not file a lawsuit on this charge within the time allotted.

On March 5, 2011, Plaintiff filed her second EEOC charge against Defendant Libertywood (Case No. 435-2011-00340), claiming that Defendant Libertywood retaliated against Plaintiff based on the filing of her first EEOC charge.  (Def.'s Mem., Ex. F, Pl.'s Second EEOC Charge (Doc. 45-6) at 1.)  Plaintiff referenced her first EEOC charge and stated that, at the time of filing her first charge, she was told that she was "still on payroll" with Defendant Libertywood.  (Id.)  Plaintiff further stated that, on February 21, 2011, she contacted Defendant Libertywood and asked to be placed on the schedule.  (Id.)  Defendant Libertywood allegedly said there was no work at the time, but Plaintiff stated that Defendant Libertywood had hired new employees during that time.  (Id.)

As part of the investigation into Plaintiff's second EEOC charge, the EEOC received a letter from Cynthia Duncan, the human resource director for Defendant Libertywood, stating:

> Every time I needed an employee to work I was told that I could not call [Plaintiff], because she was no longer an employee, but she was still on the payroll.  As of today she is still on the payroll. She is still not asked to fill in when needed.

(Def.'s Mem., Ex. I, Cynthia Duncan Letter (Doc. 45-9) at 5.) The letter was dated May 20, 2011.  Plaintiff agreed that she knew of Ms. Duncan's letter and, by the time she filed her

retaliation claims, Plaintiff says she was aware that Defendant may have been retaliating against her by not placing her on the schedule. (Def.'s Mem., Ex. K, Pl.'s Dep. (Doc. 45-11) at 29-30, 49.)

The EEOC dismissed Plaintiff's second charge and issued Plaintiff a right-to-sue letter on September 25, 2012. (Def.'s Mem., Ex. G, Second Right-to-Sue Letter (Doc. 45-7) at 1.) The letter provided the same warning that Plaintiff was to file suit within 90 days of receiving the right-to-sue letter. Yet, Plaintiff did not file a lawsuit on her second charge within the time allotted.

On October 4, 2012, Plaintiff filed her third EEOC charge against Defendant Libertywood (Case No. 435-2012-00928), claiming again that Defendant Libertywood retaliated against Plaintiff "for reporting and opposing discrimination in violation of Title VII." (Def.'s Mem., Ex. J, Pl.'s Third EEOC Charge (Doc. 45-10) at 1.) In her third charge, Plaintiff stated that she contacted Defendant Libertywood and was told that she had been discharged. (Id.) On January 28, 2013, the EEOC issued a determination that "the evidence obtained during the investigation establishes that [Plaintiff's] filing of charges of discrimination was a factor in [Defendant

Libertywood's] decision not to recall her for available jobs."
(Pl.'s Br. (Doc. 52) at 24.)  Plaintiff and Defendant
Libertywood engaged in conciliation efforts, but after those
proved unsuccessful, the EEOC issued Plaintiff a right-to-sue
letter on this claim and Plaintiff filed suit in this court on
April 17, 2013.

### C.  **Analysis**

To establish a prima facie case for retaliation in
violation of Title VII, a plaintiff must allege (1) that she
engaged in protected activity; (2) that the employer took an
adverse employment action against her; and (3) that a causal
link exists between the protected activity and the adverse
action.  Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190
(2012).  If this court finds that Plaintiff has shown a prima
facie case, Defendant must provide a legitimate,
nondiscriminatory reason for the adverse employment action, and
if it does so, Plaintiff must refute that reason by a
preponderance of the evidence.  Williams v. Cerberonics, Inc.,
871 F.2d 452, 456 (4th Cir. 1989).  In the end, Plaintiff "bears
the ultimate burden of proving that she has been the victim of
retaliation."  Laughlin v. Metro. Washington Airports Auth., 149
F.3d 253, 258 (4th Cir. 1998).

Earlier in these proceedings, this court found that Plaintiff stated a claim for retaliation under Title VII, noting that Plaintiff's Complaint "allege[d] that Plaintiff filed charges with the EEOC about her treatment, that she was thereafter not scheduled to work or allowed to return to work, and that other employees were discharged and new people hired even though Plaintiff was told there was no work available for her." (Mem. Op. & Order (Doc. 22) at 6.) Accordingly, this court denied Defendant's Motion to Dismiss in part. (Id.) However, despite this court's finding that Plaintiff stated a claim for retaliation, this court now finds that there is not enough evidence in the record to establish a prima facie case of retaliation.

First, this court notes that Plaintiff has shown that she engaged in protected activity. Protected activity under Title VII involves both "participation" in a Title VII claim or "opposition" to illegal discrimination, even if the claimant has not filed a Title VII claim against the employer. Laughlin, 149 F.3d at 259 (citing 42 U.S.C. § 2000e-3(a)). Here, Plaintiff asserts that Defendant Libertywood retaliated against her for "reporting and opposing discrimination in violation of Title VII." (Def.'s Mem., Ex. J, Pl.'s Third EEOC Charge (Doc. 45-10)

at 1.)  Plaintiff filed two EEOC charges before filing the EEOC charge that serves as the basis for this action.  As a result, Plaintiff has satisfied this court that she engaged in protected activity within the meaning of Title VII's retaliation provisions.

Second, this court also notes that Plaintiff has shown that she was subject to an adverse employment action.  Plaintiff contends that, on October 2, 2012, she was informed that she was terminated, certainly an adverse employment action.  See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 775 (4th Cir. 1997).  Furthermore, to the extent Defendant Libertywood refused to add Plaintiff to the schedule, this would also constitute an adverse employment action.  Such a repeated refusal to add Plaintiff to the schedule would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

For its part, Defendant Libertywood does not dispute that Plaintiff was subjected to an adverse employment action, arguing instead that Plaintiff had constructive notice of any adverse employment action as early as June 2010.  (See Def.'s Mem. (Doc. 45) at 7-8 ("[Plaintiff] knew that she was constructively

-24-

terminated before she filed her first EEOC complaint, and when she received her right to sue letter on her second EEOC complaint." (citations omitted)).)

Although Defendant does not dispute that Plaintiff was subject to an adverse employment action, it is worth noting that this court is limited in what adverse employment actions it can consider as the basis for Plaintiff's claim. Title VII imposes a strict time limit on bringing a charge alleging employment discrimination or retaliation, requiring that a party file her charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Therefore, if a party does not "file a charge within either 180 or 300 days of the date of the act," the party "lose[s] the ability to recover for it."[4] See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). Although an untimely filed adverse employment action is not actionable, nothing in the statute prevents "an employee from using the

---

[4] The 300-day window mentioned in 42 U.S.C. § 2000e-5(e)(1) does not apply in North Carolina. "North Carolina has no state agency with statewide 'authority to grant or seek relief from [an unlawful employment] practice . . . upon receiving notice thereof,'" see Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008) (quoting 42 U.S.C. § 2000e-5(e)(1)), meaning that Plaintiff must file a complaint within 180 days of the adverse employment action to file a timely claim.

prior acts as background evidence in support of a timely claim." Id. at 113.

Here, Plaintiff filed her third EEOC charge on October 4, 2012. (Def.'s Mem., Ex. J, Pl.'s Third EEOC Charge (Doc. 45-10) at 1.) Therefore, this court can consider any adverse employment actions that took place in the 180-day period between April 7, 2012 and October 4, 2012, but not what happened earlier.[5] Plaintiff alleges she was terminated on October 2, 2012, well after April 7, 2012, and as a result, Plaintiff's termination is an actionable adverse employment action.

---

[5] Defendant uses the untimely filed EEOC charges to argue that this court lacks subject matter jurisdiction. This court must assess whether it has subject matter jurisdiction before it can look to the merits of the case. See Kontrick v. Ryan, 540 U.S. 443, 455 (2004). As a basis for its argument, Defendant states that the claims in Plaintiff's third EEOC charge are "mere re-allegations" of the claims made in Plaintiff's time-barred second EEOC charge. (Def.'s Mem. (Doc. 45) at 7-10.) Defendant claims Plaintiff knew that she had been constructively discharged at the time of filing her second EEOC charge, and as a result, she cannot use her discharge as a basis for claiming retaliation. (Id.) However, this court finds that it does indeed have subject matter jurisdiction over the claim. The 90-day filing requirement "is not a jurisdictional prerequisite to suit in federal court," but instead is a non-jurisdictional requirement similar to the statute of limitations. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); see also Vitello v. Liturgy Training Publications, 932 F. Supp. 1093, 1096 (N.D. Ill. 1996) (citing St. Louis v. Alverno College, 744 F.2d 1314, 1316 n.2 (7th Cir. 1984)). This court will consider the effect that any untimeliness has on the merits of Plaintiff's claim, but the fact that Plaintiff did not timely file a previous EEOC charge does not strip this court of subject matter jurisdiction.

Additionally, any decision not to add Plaintiff to the schedule between April 7, 2012 and October 4, 2012, could also be an actionable adverse employment action.  However, any decisions made by Defendant Libertywood before April 7, 2012, including the actions alleged in Plaintiff's previous EEOC charges, are not actionable now.

Although not actionable, as the Supreme Court recognized in Morgan, this evidence could be used as "background evidence" in support of Plaintiff's timely claim.  See Morgan, 536 U.S. at 113.  Yet, even considering the information presented in the first and second charges as "background evidence," this court finds that there is no genuine dispute as to causation.  The evidence, even taken in the light most favorable to Plaintiff, does not establish a causal link between Plaintiff's filing of an EEOC charge and the decision not to add her to the schedule and ultimately to terminate her.

The causation prong of the retaliation prima facie case requires plaintiffs to demonstrate a causal connection between the protected activity and the adverse employment action.  Horne v. Reznick Fedder & Silverman, 154 Fed. Appx. 361, 364 (4th Cir. 2005) (per curiam).  In a Title VII retaliation claim, Plaintiff must ultimately show that the adverse employment action would

not have occurred if Plaintiff had not filed her charges of discrimination with the EEOC.  Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. ____, ____, 133 S. Ct. 2517, 2533 (2013).  This is a very high standard, and it is not enough to show that retaliation was a "motivating factor" in the decision.  See id.

When asserting a prima facie case, the Fourth Circuit has held that "very little evidence of a causal connection is required," and temporal proximity is sufficient.  Burgess v. Bowen, 466 F. App'x 272, 283 (4th Cir. 2012) (internal quotation marks and alterations omitted).  However, the Fourth Circuit has also held a lapse of as little as "two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" Horne, 154 Fed. Appx. at 364 (quoting King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).  Additionally, actions that take place before the employee's protected action can also rebut any inference of causation.  Id.

When examining Plaintiff's claim that she was discharged for her participation in a Title VII investigation, the length of time between Plaintiff's first and second EEOC charges and her eventual termination negates any inference of causation. Plaintiff filed her first EEOC charge on June 12, 2010 and her

second charge on March 5, 2011.  Plaintiff was terminated on October 2, 2012.  The 19-month interval between filing a charge and being terminated is simply too long to infer that there was a causal connection.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action, as was the case here, negates any inference that a causal connection exists between the two.").

Examining Plaintiff's claim that she was not added to the schedule due to her protected activity is a more difficult analysis.  For the reasons stated above, the length of time between Plaintiff's first and second EEOC charges and any decision to keep Plaintiff on the schedule within the actionable time period (i.e., after April 7, 2012) is simply too long to provide an inference of causation.

Nevertheless, Defendant Libertywood's actions committed before April 7, 2012, could provide some "background evidence" on the timely filed claims or establish that the decision to keep Plaintiff from the schedule in 2012 was a continuation of a retaliatory decision made earlier.  But when this court looks to Defendant Libertywood's decisions to keep Plaintiff from being

added to the schedule immediately after Plaintiff filed her first EEOC charge, it finds that there is sufficient evidence to rebut any inference of causation. Plaintiff filed her first charge with the EEOC on June 12, 2010. At that point, Plaintiff admits she had not worked for Defendant Libertywood since March 19, 2010. (Def.'s Mem., Ex. K, Pl.'s Dep. (Doc. 45-11) at 12.) The decision not to put Plaintiff on the schedule for over three months before any filing by Plaintiff - or any other alleged opposition to Defendant Libertywood - rebuts any inference that the decision not to put Plaintiff on the schedule was caused by her filing of the EEOC charge.

Moreover, any inference of causation is further rebutted by the evidence that Plaintiff was found to be insubordinate by HSG because she was observed speaking with Pam Everhart, a person whom HSG had warned all employees not to communicate with during the pendency of an investigation. This evidence further weakens Plaintiff's argument that the decision not to put Plaintiff on the schedule was done for a retaliatory purpose. All of the events that transpired and led to Plaintiff's discharge from HSG preceded Plaintiff's filing of an EEOC charge. More importantly, these incidents provide context for Defendant Libertywood's initial decision to keep Plaintiff from the

schedule.  See Lowe, 145 F.3d at 657.  Without establishing

causation, Plaintiff's claim cannot survive summary judgment,

and Defendant is entitled to judgment as a matter of law.  Id.

This court further finds that, if Plaintiff could show

causation sufficient to demonstrate a prima facie case,

Plaintiff's claim would still not survive summary judgment.

Plaintiff's insubordination is a legitimate nondiscriminatory

reason for keeping Plaintiff off of the schedule.  See Williams,

871 F.2d at 456.  Furthermore, Plaintiff has not rebutted this

legitimate nondiscriminatory reason, nor has she produced any

evidence that her termination was due to retaliatory animus.

This court does note that its decision is different from

the determination made by the EEOC.  In its determination on

Plaintiff's third charge, the EEOC found that "the evidence

obtained during the investigation establishes that [Plaintiff's]

filing of charges of discrimination was a factor in [Defendant

Libertywood's] decision not to recall her for available jobs."

(Pl.'s Br. (Doc. 52) at 24.)  The EEOC's determination is

admissible in this proceeding, but this court conducts a de novo

review of whether there is evidence of retaliation.[6]  See Laber,
438 F.3d at 421-22.

When conducting this de novo review of Plaintiff's claim,
this court has found that Plaintiff cannot establish that
retaliation was the sole cause of why Defendant Libertywood
decided not to put her on the schedule.  The EEOC appears to
have applied the mixed-motive framework and found retaliation
was a factor in the decision to keep Plaintiff off of the
schedule.  This is not enough, as this court must find that "the
unlawful retaliation would not have occurred in the absence of
the alleged wrongful action or actions of the employer."
Nassar, 133 S. Ct. at 2533.  With the undisputed evidence that
Plaintiff was terminated by HSG due to her insubordination and
the undisputed evidence that Plaintiff had not worked for
Defendant Libertywood for three months before filing her first
charge, this court cannot find that the evidence indicates a
genuine dispute as to retaliation.  As a result, this court
disagrees with the EEOC determination and finds that Defendant
Libertywood is entitled to judgment as a matter of law.

_____

[6] Because of the differing process, in this civil action,
the burden is on Plaintiff to present evidence of unlawful
discrimination.  It appears to this court that the factual
record before the EEOC may have been different from the
allegations and evidence Plaintiff presented to this court.

## III. <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Plaintiff's Pro Se Motion/Request that the Court Subpoena Witnesses for Trial (Doc. 28) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's Pro Se Motion/ Request that Mediation Fees be Waived (Doc. 29) is **GRANTED.** Plaintiff will not be required to pay mediation costs.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Request to file Report in Court Records of Mediation Session Results and Relief from Assessed Payment of $500 (Doc. 48) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Affidavit (Doc. 53) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Two of Plaintiff's Exhibits (Doc. 56) is **GRANTED IN PART** and **DENIED IN PART.** Defendant's Motion to Strike page 28 of Plaintiff's Brief (Doc. 52) is **GRANTED,** but Defendant's Motion to Strike page 23-24 of Plaintiff's Brief is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Pre-trial Motion For United States Constitutional Law Clarity Concerns And Civil Rights Court Proceedings (Doc. 61) is **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 44) is **GRANTED** and that this action is **DISMISSED.**

A judgment consistent with this Memorandum Opinion and Order and the Memorandum Opinion and Order filed January 28, 2014, will be entered contemporaneously herewith.

    This the 24th day of February, 2015.

                        _____
                             United States District Judge